# In the United States Court of Federal Claims

No. 21-1019C

(E-Filed: March 21, 2022)[1]

|  |  |  |
|---|---|---|
| BLUE WATER THINKING, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Post-Award Bid Protest; Motion for |
| THE UNITED STATES, | ) | Judgment on the Administrative Record; |
| | ) | RCFC 52.1; Disparate Treatment; Agency |
| Defendant, | ) | Evaluation. |
| | ) | |
| and | ) | |
| | ) | |
| APTIVE RESOURCES, LLC, | ) | |
| | ) | |
| Intervenor-defendant. | ) | |

E. Sanderson Hoe, Washington, DC, for plaintiff. Brooke G. Stanley, Andrew R. Guy, and Anna Menzel, of counsel.

Mariana Teresa Acevedo, Trial Attorney, with whom were Brian M. Boynton, Acting Assistant Attorney General, Martin F. Hockey, Jr., Acting Director, and Reginald T. Blades, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant. Frank V. DiNicola, Desiree A. DiCorcia, Tara T. Nash, and Christopher Murphy, United States Department of Veterans Affairs, Eatontown, NJ, of counsel.

John R. Prairie, Washington, DC, for intervenor-defendant. Cara L. Lasley and Jennifer Eve Retener, of counsel.

---

[1] This opinion was issued under seal on March 1, 2022. See ECF No. 55. Pursuant to ¶ 4 of the ordering language, the parties were invited to identify source selection, proprietary or confidential material subject to deletion on the basis that the material was protected/privileged. The parties' proposed redactions were acceptable to the court. See ECF No. 57. All redactions are indicated by brackets ([ ]).

OPINION

CAMPBELL-SMITH, Judge.

Plaintiff filed this bid protest challenging the Department of Veterans Affairs' (VA) decision to exclude plaintiff from the competitive range in a procurement for information technology (IT) services. See ECF No. 26 (amended complaint). Plaintiff filed a motion for judgment on the administrative record (AR) in this case, ECF No. 40; and defendant and intervenor-defendant each filed cross-motions for judgment on the AR, ECF No. 42; ECF No. 44. After the initial briefing was complete, the court ordered the parties to submit supplemental briefs on the issue of standing, see ECF No. 52, and the parties did so jointly, see ECF No. 53.

In ruling on the motions, the court has considered: (1) the AR, ECF No. 20;[2] (2) plaintiff's amended complaint, ECF No. 26; (3) plaintiff's motion for judgment on the AR, ECF No. 40; (4) intervenor-defendant's cross-motion for judgment on the AR and response to plaintiff's motion, ECF No. 42; (5) defendant's cross-motion for judgment on the AR and response to plaintiff's motion, ECF No. 44; (6) plaintiff's reply in support of its motion and response to the cross-motions, ECF No. 46; (7) intervenor-defendant's reply in support of its cross-motion, ECF No. 48; (8) defendant's reply in support of its cross-motion, ECF No. 50; and (9) the parties' joint supplemental brief, ECF No. 53.

The motions are now fully briefed, and ripe for decision. The parties did not request oral argument, and the court deems such argument unnecessary. The court has considered all of the parties' arguments and addresses the issues that are pertinent to the court's ruling in this opinion. For the following reasons, plaintiff's motion for judgment on the AR is **DENIED**, and defendant's and intervenor-defendant's cross-motions for judgment on the AR are **GRANTED**.

---

[2] When defendant initially filed the administrative record (AR) on March 15, 2021, see ECF No. 17, it inadvertently omitted information, and therefore moved to complete the AR on March 17, 2021, see ECF No. 18 at 1 (defendant's motion to complete the AR). The court granted the motion and directed defendant to file the completed AR. See ECF No. 19 (order). Defendant filed the completed AR on March 19, 2021, superseding its original AR. See ECF No. 20.

I.    Background[3]

  A.    The Solicitation

On November 12, 2019, the VA issued solicitation number 36C10B19R0046, for IT services as part of the Transformation Twenty-One Total Technology Next Generation (T4NG) contract on-ramp program (the solicitation).[4] See ECF No. 20-2 at 300-436 (solicitation). The procurement provides for a five-year contract base period and one five-year option period, with a maximum value of $22.3 billion. See id. at 315. The solicitation explained the scope of the procurement as follows:

> The Contractor shall provide total IT services solutions including the following functional areas: program management, strategy, enterprise architecture and planning; systems/software engineering; software technology demonstration and transition; test and evaluation; independent verification and validation; enterprise network; enterprise management framework; operations and maintenance; cybersecurity; training; IT facilities; and other solutions encompassing the entire range of IT and Health IT requirements, to include software and hardware incidental to the solution. Accordingly, Task Orders may include acquisitions of software and IT products . . . . These services, as well as related IT products, may encompass the entire life-cycle of a system. Moreover, services and related products covered under this contract shall be global in reach and the Contractors must be prepared to provide services and deliverables worldwide.

Id. at 311.

The solicitation was intended to "replenish the pool of [service-disabled veteran-owned small businesses (SDVOSBs)]," "anticipating that several incumbent SDVOSBs would no longer qualify at the end of the initial five-year [contract] period." ECF No. 44 at 11 (citing ECF No. 20-2 at 262). The solicitation also explained that "[t]his competition is being conducted pursuant to the on-ramp clause of the T4NG basic contract. The Government intends to award seven (7) contracts to verified [SDVOSBs]." ECF No. 20-2 at 431. The VA, however, reserved the right to adjust that number in its

---

[3]    This case involves considerable detail. For purposes of deciding these motions the court will relate only those details that are necessary to the instant analysis.

[4]    The copy of the solicitation included in the AR is not dated, but the index filed by defendant, see ECF No. 20-1 at 3, and presentation slides from the Source Selection Advisory Council's May 27, 2020 initial evaluation briefing, see ECF No. 20-5 at 64, indicate that the solicitation was issued on November 12, 2019.

discretion.  See id.  Awards were to be made on a best-value basis, considering five evaluation factors, including "Technical, Past Performance, Veterans Employment, Small Business Participation Commitment Factor (SBPC), and Price."  Id.  Those factors were valued as follows:

> The Technical Factor is significantly more important than the Past Performance Factor, which is slightly more important than the Veterans Employment Factor which is slightly more important than the SBPC Factor, which is slightly more important that the Price Factor.  The Technical Factor has two (2) Sub-factors:  Sample Task Sub-Factor and Management Sub-factor.  Within the Sample Task Sub-factor, Sample Task 1 and Sample Task 2 are equally important.  The Sample Task Sub-factor is significantly more important than the Management Sub-factor.  All non-price factors, when combined, are significantly more important than the Price Factor.  To receive consideration for award, a rating of no less than "Acceptable" must be achieved for the Technical Factor, all Technical Sub-factors, and the SBPC Factor.  Offerors are cautioned that the awards may not necessarily be made to the lowest Price offered or the most highly rated technical proposals.

Id.

To promote an efficient evaluation process, the solicitation contemplated that "the evaluation [would] be conducted in phases, Step One and Step Two."  Id.  For Step One, the offerors were directed to submit a technical proposal and price proposal responding to Sample Task 1.  See id. at 422-23.  Following an evaluation of the Sample Task 1 response, the VA was to establish a competitive range, and select the offerors eligible to proceed to Step Two.  See id. at 431.  Offerors that did not advance to Step Two would be excluded from the competition, and those that proceeded were to submit a response to "Sample Task 2, the Management Sub-Factor, Past Performance Factor, Veterans Employment Factor, SBPC Factor, and Solicitation, Offer & Award Documents, Certifications & Representations and Terms and Conditions."  See id. at 432.  Following evaluation of Step Two proposals, the VA "may establish a competitive range and conduct discussions with all Offerors within the competitive range, or proceed directly to award without discussions."  Id.

The sample tasks were intended to test the "Offeror's expertise and innovative capabilities to respond to the types of situations that may be encountered in performance of a contract resulting from this solicitation."  Id. at 433.  For this reason, "the Offerors [were not] given an opportunity to correct or revise a Sample Task response."  Id.  Responses to the sample tasks were evaluated in accord with the following:

> (1)    Understanding of Problems—The proposal will be evaluated to determine the extent to which the Offeror demonstrates a clear understanding

4

of all features involved in solving the problems and meeting the requirements presented by the Sample Task; and the extent to which uncertainties are identified and resolutions proposed.

(2)   Feasibility of Approach—The proposal will be evaluated to determine whether the Offeror's methods and approach to meeting the Sample Task requirements provides the Government with a high level of confidence of successful completion.

<u>Id.</u>  And, considering the foregoing criteria, each sample task response was assigned one of the following overall adjectival ratings:

a.   Outstanding—A proposal that meets or exceeds all of the Government's requirements, contains extensive detail, demonstrates a thorough understanding of the problems, and is highly feasible (low risk).

b.   Good—A proposal that meets or exceeds all of the Government's requirements, contains at least adequate detail, demonstrates at least an understanding of the problems, and is at least feasible (low to moderate degree of risk).

c.   Acceptable—A proposal that at least meets all of the Government's requirements, contains at least minimal detail, demonstrates at least a minimal understanding of the problems, and is at least minimally feasible (moderate to high degree of risk).

. . . .

e.   Unacceptable—A proposal that contains a major error(s), omission(s), or deficiency(ies) that indicates a lack of understanding of the problems or an approach that cannot be expected to meet requirements or involves a very high risk; and none of these conditions can be corrected without a major rewrite or revision of the proposal.  A proposal that fails to meet any of the Government's requirements after the final evaluation shall be ineligible for award regardless of whether it can be corrected without a major rewrite or revision of the proposal.

ECF No. 20-4 at 418 (subsection d is omitted because it is inapplicable to evaluations of the sample tasks).

B.   Sample Task 1

In Sample Task 1, the VA sought responses to the following hypothetical scenario:

5

> The U.S. Department of Veterans Affairs (VA) signed a multi-year contract to modernize its electronic health record (EHR) system and to replace its legacy Veterans Information Systems and Technology Architecture (VISTA) system. VA's infrastructure/Information Technology (IT) components will need to be analyzed, reported, prioritized, remediated, and tracked to prepare VA for the new EHR system. Using the T4NG Performance Work Statement, describe in detail your approach to analyze, remediate, and report VA infrastructure/IT deficiencies across the organization to prepare VA facilities for the new EHR system.

ECF No. 20-2 at 502. The language of Sample Task 1 incorporated by reference the requirements included in the performance work statement (PWS), which is part of the solicitation. See id. at 307-70. The VA gave offerors seven business days to submit their responses, which were limited to a maximum of twenty-five pages. See id. at 269.

To assist in evaluating the Sample Task 1 responses, the VA "prepared a 'Government developed solution' as a benchmark against which to evaluate offerors' understanding of the problem and feasibility of their approach in their sample task one responses." ECF No. 44 at 15 (citing ECF No. 20-12 at 911). In developing this evaluation tool, the VA "identified all of the high level focus areas . . . that an offeror would have had to address in order to successfully execute the effort, as well as the lower-level focus areas . . . that were intrinsic to each high level focus area." Id.

The Sample Task 1 responses were assigned strengths, weaknesses, or deficiencies in each of the five high level focus areas, according to the following criteria:

> Strength. Any aspect of a proposal that, when judged against a stated evaluation criterion, enhances the merit of the proposal or increases the probability of successful performance of the contract. A significant strength appreciably enhances the merit of a proposal or appreciably increases the probability of successful contract performance.
>
> Weakness. A flaw in a proposal that increases the risk of unsuccessful contract performance. A significant weakness in a proposal is a flaw that appreciably increases the risk of unsuccessful contract performance.
>
> Deficiency. A material failure of a proposal to meet a Government requirement, or a combination of significant weaknesses in a proposal that increases the risk of unsuccessful contract performance to an unacceptable level.

ECF No. 20-4 at 419. Strengths and weaknesses were to be assigned only for the high level focus areas. See ECF No. 20-12 at 1093.

The VA subsequently issued an amendment to the solicitation to "1) Revise portions of the Proposal Format requirements as provided within Section L.10 of the Solicitation; and, 2) Allow for resubmittal of only the Sample Task 1 as necessary to ensure the instructions are met as described below." ECF No. 20-2 at 510-11. The VA stressed that:

> The Technical Evaluation Approach, as stated within Section M.C.1.a of the Solicitation, remains unchanged; Offerors are only being provided this limited opportunity to resubmit Sample Task 1 to ensure compliance with Section L.10.2.a, Format, as amended herein. Future opportunities to correct or revise a Sample Task response will not be provided.

Id. at 511. It further noted that, "Offerors are reminded and cautioned that all Solicitation requirements, as amended herein, to include proposal formatting, must be strictly adhered to." Id. In response to the amendment, all offerors resubmitted their proposals. See ECF No. 20-4 at 56-352 (offerors' revised Sample Task 1 proposals).

C. Organizational Conflict of Interest Determination

Because Sample Task 1 involved the electronic health record modernization (EHRM) system and, in 2018, the VA signed a multi-year contract with Cerner Corporation to replace that system, the contracting officer reviewed the task to "determine if Cerner Corporation or any of its subcontractors performing under the EHRM contract would have an Organizational Conflict of Interest (OCI) with the T4NG On-Ramp solicitation as a result of information that may cause an unfair competitive advantage." ECF No. 20-20 at 2. The contracting officer considered Federal Acquisition Regulation (FAR) 9.505(b), which defines OCIs, and consulted the Source Selection Evaluation Board (SSEB) Chairperson "who led the effort in developing Sample Task 1 and its corresponding solution." Id. at 1-2. The contracting officer "confirmed that in order to provide a response to the Sample Task 1 question, Offerors do not need any non-public knowledge of [EHRM] end state requirements, nor would access to any non-public information pertaining to EHR provide an Offeror with a competitive advantage." Id. Instead, Sample Task 1 required a detailed overview of the offeror's approach to "analyze, remediate, and report VA infrastructure/IT deficiencies," which "would be essentially the same for any other major IT system similar in size and scope; therefore, [it] is not specific to the EHR system." Id. at 2.

The contracting officer concluded that, because "the solution to Sample Task 1 does not require the Offerors to have any non-public knowledge of Cerner or []EHRM end state requirements, any proprietary information Cerner or any of its subcontractors have as a result of the EHRM contract, would not present an unfair competitive advantage." Id. (footnote omitted). This conclusion "extends to other contractors that may have indirectly supported EHRM efforts through contracts and orders beyond the

7

Cerner EHRM contract." Id. at n.1. Thus, the contracting officer determined that no OCI existed "that would preclude Cerner or any of its subcontractors from participating in the solution." Id.

### D. First Competitive Range Determination

Of the ninety-four proposals evaluated by the VA, "61 proposals were rated 'Unacceptable;' 21 proposals were rated 'Acceptable;' eight (8) proposals were rated 'Good;' and four (4) proposals were rated 'Outstanding.' The evaluated prices of the 94 offerors ranged from a low of $6.13 Billion to a high of $16.33 Billion." ECF No. 20-5 at 239 (June 4, 2020 Source Selection Authority (SSA) memorandum for record determining the competitive range); see also id. at 196 (May 27, 2020 SSA Step One Evaluation Summary). In determining the competitive range, the SSA excluded all offerors with "unacceptable" Sample Task 1 ratings. See id. at 239. The SSA determined that excluding the sixty-one unacceptable proposals was appropriate because "Sample Task 1 was significantly more important than Price." Id. at 240. The SSA also noted that "there was ample competition among Offerors with 'Acceptable' or better technical proposals with low evaluated prices." Id. The contracting officer concurred with the SSA's conclusion and thirty-three offerors were included in the competitive range for evaluation in Step Two. See id.

### E. Step Two Evaluation and Competitive Range Determination

The VA released Sample Task 2 to the offerors in the competitive range on June 30, 2020; proposals were due on July 10, 2020. See ECF No. 20-5 at 255 (email releasing Sample Task 2); ECF No. 20-12 at 1084 (October 20, 2020 SSA Interim Evaluation Briefing). Sample Task 2 required offerors to create an application that allowed users to submit a sample form digitally and to provide a narrative description of their approach to the task along with a separate technical description of what they built and an architecture diagram of what they used to do it. See ECF No. 20-12 at 913-14. Offerors were required to provide, in addition to their response to Sample Task 2, the management proposal—including all contractor teaming agreements (CTAs)—and past performance, Veterans employment, and small business participation proposal volumes. See ECF No. 20-2 at 425-26. The SSEB then evaluated the proposals and presented the results of its evaluation to the Source Selection Advisory Council (SSAC) and the SSA in a "detailed slide presentation and thorough discussion of the evaluation assessments pertaining to each Step Two proposal." ECF No. 20-12 at 1286. In summary, the proposals were rated as follows:

> 24 proposals were rated "Acceptable," eight (8) proposals were rated "Good," and one (1) proposal was rated "Outstanding" in the Technical Factor. All 33 proposals were rated "Low Risk" in the Past Performance Factor. In the Veterans Employment Factor, the 33 proposals ranged from

> eight (8) to 18,182 employees and one (1) to 4,574 Veteran employees, and the percentage of Veterans employed ranged from 4.41 percent to 71.08 percent. For the SBPC Factor, four (4) proposals were rated "Susceptible to Being Made Acceptable," two (2) proposals were rated "Acceptable," ten (10) were rated "Good," and 17 were rated "Outstanding." The evaluated prices ranged from a low of $6.62 billion to a high of $10.48 billion.

ECF No. 20-12 at 1286-87 (October 23, 2020 SSA Memorandum for Record re: Step Two Competitive Range Determination); see also id. at 1282-83 (SSEB Step Two Evaluation Summary).

The SSA considered "all factors and sub-factors and their relative importance," and determined that offerors rating "Acceptable" in the technical factor should be excluded from the competitive range because "they were not among the most highly rated proposals with a realistic prospect for award." Id. at 1288. The SSA determined that "reviewing the detailed findings" of the offerors' evaluations revealed that those rated "Acceptable" "presented a higher degree of risk in the Sample Task responses than those Offerors rated 'Good' or better in the Technical Factor." Id. The SSA also considered the offerors' past performance—the second most important factor as defined by the solicitation—and determined that, although they were each "assessed a varying number of weaknesses, each was considered Low Risk and therefore essentially equal in that Factor." Id.

The SSA also "considered the fact" that some of the offerors rated "Acceptable" in the technical factor "were stronger in the remaining factors . . . and/or proposed lower evaluated prices" than higher rated offerors. Id. The SSA determined that, given the relative importance of the technical factor and past performance factor, "none of these differences were significant enough to outweigh the 'Good' or better ratings received for the Technical Factor." Id. The contracting officer concurred with the SSA's determination that the nine offerors that received "Good" or better ratings in the technical factor would compose the competitive range for discussions. Id. at 1289.

After discussions and final proposal revisions, the SSEB presented the SSA with the final results of evaluation on November 18, 2020. See ECF No. 20-19 at 729 (Memorandum re: Fair and Reasonable Price Determination). The SSA determined to award contracts to all nine offerors in the competitive range for award, see id., the contracting officer determined that all nine offerors proposed fair and reasonable prices, see id. at 730, and the VA issued its Source Selection Decision awarding contracts to each of the nine offerors in the competitive range, see id. at 768-72.

F.   Plaintiff's Evaluation

Plaintiff was given an "Acceptable" rating for Sample Task 1 and "Good" for Sample Task 2. ECF No. 20-12 at 916 (VA's Technical Factor Initial Evaluation Report

9

for plaintiff). Plaintiff's Sample Task 1 rating was based on an assessment of one significant strength, one strength, and three weaknesses. See id. at 917-21. The weaknesses were the result of plaintiff's proposal providing only "minimal detail" in its approach to "analyz[ing] and remediat[ing]" the agency's IT network deficiencies, infrastructure equipment deficiencies, and component deficiencies. Id. at 919; see also id. at 919-21. The evaluation explained that the lack of detail adds risk for the agency that plaintiff's proposal may not meet the VA's needs, may ultimately disrupt patient care, and may result in inferior performance for clinicians. See id. at 919-21.

Plaintiff's Sample Task 2 was given one significant strength, four strengths, and one significant weakness. See id. at 922-25. The significant weakness was based on plaintiff's architecture/network diagram "demonstrat[ing] a lack of understanding on how to depict its overall software architecture." Id. at 925. The evaluation explained that plaintiff failed to depict several of its environments and systems in its diagram, which "appreciably increases the risk that the Offeror will not be able to create applications utilizing cloud platforms, environments, and cloud services." Id.

"Based on the relative importance of the sample tasks, wherein each sample task was of equal importance, and considering the qualitative evaluation results of the individual sample tasks," plaintiff received an overall "Sample Task Subfactor rating of **ACCEPTABLE**." Id. at 916 (emphasis in original). Plaintiff received a management subfactor rating of "**Acceptable**," based on one assessed strength. Id. at 927 (the VA's Technical Factor Management Subfactor Initial Evaluation Report for plaintiff) (emphasis in original). "Based on the evaluation results of the Technical subfactors and with due consideration given to the weights for those subfactors," plaintiff received an overall rating for the technical factor of "**ACCEPTABLE**." Id. at 910 (emphasis in original).

Plaintiff was rated "Low Risk" on the past performance factor, id. at 929-31, had a veteran employment percentage of [ ] percent, see id. at 932, and received a rating of "**OUTSTANDING**" for its small business participation factor, id. at 933-34 (emphasis in original). Plaintiff proposed an evaluated price of $7,779,476,007.31. See id. at 1287 (summarizing the offerors' ratings and prices). The offerors' proposed prices ranged from "a low of $6.62 billion to a high of $10.48 billion." Id.

G. Procedural History

The VA informed plaintiff that it was not included in the competitive range and had, therefore, been eliminated from the competition on October 23, 2020. See ECF No. 20-13 at 8-9. Plaintiff requested a debriefing on its evaluation, which the VA provided on November 3, 2020. See id. at 124-80. Plaintiff filed a protest of its exclusion from the competitive range with the Government Accountability Office (GAO) on November 13, 2020. See ECF No. 20-14 at 1-25. The GAO denied the protest on February 22,

2021, see ECF No. 20-17 at 180-94. Plaintiff filed its complaint in this court on March 2, 2021, see ECF No. 1, and amended its complaint on March 22, 2021, see ECF No. 26.

II.     Legal Standards

In its amended complaint, plaintiff invokes this court's bid protest jurisdiction. See ECF No. 26 at 2. This court's bid protest jurisdiction is based on the Tucker Act, which gives the court authority:

> to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement. . . . without regard to whether suit is instituted before or after the contract is awarded.

28 U.S.C. § 1491(b)(1). The Tucker Act also states that the court may grant "any relief the court considers proper . . . including injunctive relief." 28 U.S.C. § 1491(b)(2).

To establish jurisdiction, a plaintiff must therefore demonstrate that it is an "interested party." 28 U.S.C. § 1491(b)(1). The Federal Circuit has held that the "interested party" requirement "imposes more stringent standing requirements than Article III." Weeks Marine, Inc. v. United States, 575 F.3d 1352, 1359 (Fed. Cir. 2009). Though the term "interested party" is not defined by the statute, courts have construed it to require that a protestor "establish that it '(1) is an actual or prospective bidder and (2) possess[es] the requisite direct economic interest." See id. (quoting Rex Serv. Corp. v. United States, 448 F.3d 1305, 1308 (Fed. Cir. 2006)) (alteration in original).

Once jurisdiction is established, the court's analysis of a "bid protest proceeds in two steps." Bannum, Inc. v. United States, 404 F.3d 1346, 1351 (Fed. Cir. 2005). First, the court determines, pursuant to the Administrative Procedure Act standard of review, 5 U.S.C. § 706, whether the "agency's action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with [the] law." Glenn Def. Marine (ASIA), PTE Ltd. v. United States, 720 F.3d 901, 907 (Fed. Cir. 2013) (citing 28 U.S.C. § 1491(b)(4) (adopting the standard of 5 U.S.C. § 706)). If the court finds that the agency acted in error, the court then must determine whether the error was prejudicial. See Bannum, 404 F.3d at 1351.

To establish prejudice, "a protester must show 'that there was a substantial chance it would have received the contract award but for that error.'" Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365, 1367 (Fed. Cir. 1999) (quoting Statistica, Inc. v. Christopher, 102 F.3d 1577, 1582 (Fed. Cir. 1996)). "In other words, the protestor's chance of securing the award must not have been insubstantial." Info. Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1319 (Fed. Cir. 2003) (citations

omitted). The substantial chance requirement does not mean that plaintiff must prove it was next in line for the award but for the government's errors. See Sci. & Mgmt. Res., Inc. v. United States, 117 Fed. Cl. 54, 62 (2014); see also Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1562 (Fed. Cir. 1996) ("To establish prejudice, a protester is not required to show that but for the alleged error, the protester would have been awarded the contract."). But plaintiff must, at minimum, show that "had the alleged errors been cured, . . . 'its chances of securing the contract [would have] increased.'" Precision Asset Mgmt. Corp. v. United States, 125 Fed. Cl. 228, 233 (2016) (quoting Info. Tech., 316 F.3d at 1319).

Given the considerable discretion allowed contracting officers, the standard of review is "highly deferential." Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1058 (Fed. Cir. 2000). As the Supreme Court of the United States has explained, the scope of review under the "arbitrary and capricious" standard is narrow. See Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 285 (1974). "A reviewing court must 'consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment," and "[t]he court is not empowered to substitute its judgment for that of the agency.'" Id. (quoting Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416 (1971)); see also Weeks Marine, 575 F.3d at 1368-69 (stating that under a highly deferential rational basis review, the court will "sustain an agency action 'evincing rational reasoning and consideration of relevant factors'") (citing Advanced Data Concepts, 216 F.3d at 1058).

III.     Analysis

According to plaintiff, the VA "neglected to give each proposal a full and fair consideration based on all evaluation criteria." ECF No. 40-1 at 5 (plaintiff's memorandum in support of its motion). Specifically, plaintiff argues that the VA's evaluation was flawed because it "downgraded [plaintiff's] approach based on the omission of insignificant details in [plaintiff's] write up" for Sample Task 1 and failed to "evenhandedly apply its criteria" for that task. Id. Likewise, for Sample Task 2, plaintiff argues that the agency assigned it a significant weakness for "excluding a handful of references from a diagram in the proposal" that "appeared elsewhere in [plaintiff's] proposal narrative" and "did not treat other offerors the same as" plaintiff. Id. at 5-6. Finally, plaintiff contends that the VA "failed to give due consideration to the non-technical evaluation factors" in its final competitive range determination, and instead "dispatched" the other factors in a manner "flatly inconsistent with real differences between the proposals." Id. at 6.

Defendant responds that plaintiff's "challenges to VA's evaluation amount to mere disagreement with them."[5] ECF No. 44 at 23. According to defendant, the record "extensively" documents the agency's "lawful and rational decision-making" in "expert technical evaluations by the SSEB and high-level review and independent analysis by the SSA" that "applied the solicitation criteria in evaluating different proposals differently." Id.

    A.    Plaintiff Has Standing to Protest Its Exclusion from the Competitive Range

The record is clear that, for standing purposes, plaintiff was an actual offeror in the subject procurement. See Weeks Marine, 575 F.3d at 1359; see also ECF No. 26 at 2; ECF No. 20-3 at 138-207. Thus, to establish standing plaintiff must demonstrate that it has a direct economic interest in the procurement. See Weeks Marine, 575 F.3d at 1359. To demonstrate a direct economic interest sufficient to support standing, plaintiff must both show that it had a substantial chance of award and show that it was prejudiced by the agency's action. See Wis. Physicians Serv. Ins. Co. v. United States, 151 Fed. Cl. 22, 30 (2020). In short, plaintiff "must show that there was a 'substantial chance' it would have received the contract award but for the alleged error in the procurement process." Info. Tech., 316 F.3d at 1319 (citing Alfa Laval, 175 F.3d at 1367). To make the appropriate showing, plaintiff must demonstrate "more than a bare possibility of receiving the award." Precision Asset, 125 Fed. Cl. at 233 (citing Bannum, 404 F.3d at 1358) (affirming the trial court's determination that the plaintiff had not demonstrated a substantial chance of award when its "argument rest[ed] on mere numerical possibility, not evidence").

The parties agree that plaintiff has standing to bring its challenges to the VA's evaluation of its proposal. See ECF No. 53 at 3. The court agrees. Plaintiff has demonstrated that it had a substantial chance of being included in the competitive range. Plaintiff need not show actual causation to make such a showing. See Bannum, 404 F.3d at 1358 ("This test is more lenient than showing actual causation."). Plaintiff here has only alleged errors in its technical evaluation and error in the consideration of the past performance factor and veterans employment factor that, if valid, could have placed plaintiff within the final competitive range. See ECF No. 40-1 at 5-6; see also Wis. Physicians, 151 Fed. Cl. at 32. Plaintiff's position as a technically acceptable offeror that was not included in the competitive range, along with the alleged flaws in the VA's evaluation, are sufficient to establish plaintiff's substantial chance of inclusion in the competitive range. See Info. Tech., 316 F.3d at 1319.

---

[5]    Because intervenor-defendant's arguments track closely with defendant's arguments, the court will not separately discuss intervenor-defendant's arguments unless they are both different from the arguments made by defendant and pertinent to this decision.

      B.      The VA's Evaluation of Plaintiff's Proposal Was Not Arbitrary or Capricious

            1.      The VA Appropriately Evaluated Plaintiff's Sample Task 1 and Applied the Evaluation Criteria Equitably

Plaintiff argues that the VA "shirked" its evaluation duty in reviewing its Sample Task 1 proposal "by introducing simplistic, short-hand devices that permitted it to eliminate offers before engaging in any critical evaluative analysis as procurement law and the Solicitation demanded." ECF No. 40-1 at 15. According to plaintiff, the agency failed to make this "critical examination" and instead relied on the short-hand "'detail'— the more detail being more indicative of an offeror's understanding of a problem or approach to resolving a problem." Id. Plaintiff contends that it "fully described" its approach to the areas in which it was assigned weaknesses, id. at 16, and the VA "downgraded [plaintiff's] proposal with a weakness for not stating the very obvious conclusions of those analyses," id. at 17-18. See also id. at 18-22 (describing, as exemplars, multiple instances of plaintiff having demonstrated an understanding of the problem, but being downgraded for not stating an "obvious" conclusion). Ultimately, plaintiff argues, if the agency "had taken the time to consider the logical implications of what [plaintiff] proposed, [plaintiff] would not have been faulted for such alleged errors." Id. at 19. Plaintiff further argues that it understood "the RFP and the VA's practice in the predecessor T4NG procurement" to require it to describe how it would manage the task, but the VA failed to evaluate management in Sample Task 1. Id. at 23.

Plaintiff next argues that the agency treated its Sample Task 1 proposal differently from those of other offerors. See id. at 24-29. Plaintiff contends that "[t]here are at least three instances . . . where awardees failed to address elements the VA thought were necessary for analysis and remediation efforts, or addressed them with a similar degree of detail as [plaintiff]," but those offerors were not assigned the same weaknesses or faults. Id. at 25; see also id. at 25-28 (addressing the three examples).

Defendant responds that plaintiff's arguments are not supported by the record and the agency "properly evaluated detail under each high level and lower-level area to assess the offeror's understanding of the problem and feasibility of its approach." ECF No. 44 at 26. Defendant argues that the agency reasonably determined that the details plaintiff failed to include in its proposal were necessary and clearly included in the sample task instructions. See id. at 27-33. And, to the extent plaintiff argues that the solicitation instructions were unclear, defendant contends that plaintiff waived that challenge. See id. at 28. Defendant goes on to argue that the agency also considered plaintiff's management in its evaluation and assessed plaintiff its significant strength and strength on the merits of its management approach. See id. at 33-34.

Defendant further responds that "there are substantial differences in the proposals" that make the agency's evaluation of the proposals simply different, but not unfairly so. Id. at 34. Defendant argues that although the other offerors against which plaintiff compares its evaluation may have presented similar narrow issues to plaintiff's proposal, the overall proposals were substantially different. See id. at 35-37 (distinguishing the proposals' differences, with particular reference to plaintiff's three examples). According to defendant, "[t]he agency's different treatment of different proposals is supported by the record and should not be second-guessed by this Court." Id. at 37.

In the court's view, the agency's evaluation of plaintiff's proposal was reasonable and rational. The record reflects that the VA's evaluation was detailed and reasoned, and included review and discussion of each of plaintiff's assigned weaknesses. See ECF No. 20-12 at 917-21. It is not in the court's purview to "'substitute its judgment for that of the agency.'" Bowman, 419 U.S. at 285 (quoting Citizens to Preserve Overton Park, 401 U.S. at 416). If, as it has here, the VA has "articulate[d] a 'rational connection between the facts found and the choice made,'" the court will uphold the agency's decision. Id. (quoting Burlington Truck Lines v. United States, 371 U.S. 156, 168 (1962)). The court perceives no failure to consider relevant factors for evaluation or clear error of judgment by the VA that would support overturning the agency's conclusions about plaintiff's proposal weaknesses. See Bowman, 419 U.S. at 285. Instead, it appears that plaintiff's challenges to the VA's evaluation of the proposals amount to disagreements with the VA's conclusions.

Further, to prevail on its claims of disparate treatment, plaintiff must demonstrate that the VA "unreasonably downgraded its proposal for deficiencies that were 'substantively indistinguishable' from or nearly identical to those contained in other proposals." Office Design Grp. v. United States, 951 F.3d 1366, 1372 (Fed. Cir. 2020) (quoting Enhanced Veterans Sols., Inc. v. United States, 131 Fed. Cl. 565, 588 (2017)). If plaintiff fails to demonstrate that the proposals at issue are "indistinguishable for purposes of the evaluation, then the exercise instead crosses the line and involves the second guessing of 'minutiae,'" which is an inappropriate exercise for the court to undertake. Enhanced Veterans, 131 Fed. Cl. at 588 (quoting E.W. Bliss Co. v. United States, 77 F.3d 445, 449 (Fed. Cir. 1996)).

A careful review of plaintiff's cited examples of allegedly disparate treatment demonstrates that plaintiff has not made the requisite showing that its proposal is "substantively indistinguishable" from the other quoters' proposals. See Office Design Grp., 951 F.3d at 1372. Plaintiff's examples represent granular similarities between the proposals that do not account for differences between the overall proposals and overall evaluations.[6] See, e.g., ECF No. 40-1 at 25-26 (discussing plaintiff's example of the

---

[6] For example, while, as plaintiff points out, offeror 44 and plaintiff were assigned a significant weakness and a weakness, respectively, for their lack of detail on the high-level focus area "Analyze/Remediate Infrastructure Deficiencies," the two proposals overall were different,

treatment of one high-level factor). Compare, e.g., ECF No. 20-12 at 813-16, with id. at 917-21 (the evaluations of offeror 44 and plaintiff). When taking into account the entirety of the proposals and the entirety of the evaluations, the proposals that plaintiff asserts are "substantively indistinguishable," become readily distinguishable. Office Design Grp., 951 F.3d at 1372.

The court will not involve itself in the inappropriate "second guessing of 'minutiae'" for which plaintiff presses. Enhanced Veterans, 131 Fed. Cl. at 588 (quoting E.W. Bliss, 77 F.3d at 449). The court is satisfied that the VA closely reviewed each proposal and that any differences in evaluation outcome are not the result of disparate treatment of "indistinguishable" proposals. Id. Rather, in the court's view, the evaluation flaws and disparate treatment of which plaintiff complains amount to a strong disagreement with the conclusions the VA drew during its evaluation. The court cannot and will not substitute its judgment for that of the agency when the agency has clearly articulated a rational connection between facts and conclusions about distinguishable proposals. See Bowman, 419 U.S. at 285; Office Design Grp., 951 F.3d at 1372. Plaintiff's claims related to the VA's evaluation of its proposal must, therefore, fail.

### 2. The VA Appropriately Evaluated Plaintiff's Sample Task 2 and Applied the Evaluation Criteria Equitably

Plaintiff also argues that the VA failed to reasonably evaluate its Sample Task 2 when it applied unstated evaluation criteria to plaintiff's architecture/network diagram. See ECF No. 40-1 at 29-33. According to plaintiff, the agency "arbitrarily assigned [plaintiff] a significant weakness for excluding a handful of references from [an] architecture/network diagram in its proposal despite the fact that those references appeared elsewhere in [plaintiff's] proposal narrative." Id. at 29. Plaintiff contends that this weakness arose out of "a new and unstated criterion—whether [plaintiff] demonstrated an 'understanding on **how to depict** its overall software architecture.'" Id. at 30 (citing ECF No. 20-12 at 925) (emphasis in original). Plaintiff goes on to argue that the agency's assessment was also "unreasonably narrow" and failed to acknowledge that plaintiff included the information missing from the diagram in its narrative. Id. at 31; see also id. at 32. Plaintiff further argues that this assessment constituted disparate treatment

---

which merited different overall ratings. Compare ECF No. 20-12 at 813-16, with id. at 917-21. Plaintiff argues that offeror 44's significant weakness in one area—in which plaintiff was also weak—should ensure that it merited an overall rating like plaintiff's proposal. See ECF No. 40-1 at 25-26. However, offeror 44's proposal was also assessed a significant strength and three strengths, while plaintiff's proposal received a significant strength, one strength and two other weaknesses. See ECF No. 20-12 at 814-15, 917-21. Thus, the court cannot credit plaintiff's assertion that the two proposals should be assessed the same overall rating. The court carefully reviewed each of plaintiff's examples and cites just this one as an exemplar of what it found for each cited example.

16

because the agency "only allocated" other offerors that failed to fully depict their software architecture a weakness or failed to assess a weakness at all. Id. at 33.

Defendant responds that plaintiff "failed to submit a technically compliant response and was properly assigned a significant weakness." ECF No. 44 at 38. Defendant explains that Sample Task 2 required two deliverables—a narrative description of each offeror's proposal and an architecture diagram that was "a separate portion with its own page limitation." Id. Defendant argues that plaintiff failed to comply with the "express terms of the deliverable," and the agency "was not required to go searching for the information in a separate proposal section and resolve the inconsistencies between the two volumes." Id. at 39. Defendant further argues that the agency's assessment did not evince disparate treatment—as there were "clear technical differences" between the proposals, and plaintiff's proposal was the only one that "omitted all environments . . ., omitted the cloud platform it used . . ., and did not include any of its cloud services." Id. at 40 (emphasis in original).

As with Sample Task 1, the agency's evaluation of plaintiff's Sample Task 2 proposal was reasonable and rational. The record reflects that the VA's evaluation was detailed and reasoned, and appropriately applied the criteria stated in the solicitation. See ECF No. 20-12 at 925. It is not in the court's purview to "'substitute its judgment for that of the agency.'" Bowman, 419 U.S. at 285 (quoting Citizens to Preserve Overton Park, 401 U.S. at 416). If, as it has here, the VA has "articulate[d] a 'rational connection between the facts found and the choice made,'" the court will uphold the agency's decision. Id. (quoting Burlington Truck Lines, 371 U.S. at 168). The record reflects that the agency required an offered diagram to be presented separately from the narrative description of the proposal and evaluated that portion of the task separately from the narrative portion. See ECF No. 20-12 at 913-14. The court agrees with defendant that the agency is not required to piece together plaintiff's proposal to make it clear; it is plaintiff's responsibility to "prepare its proposal according to the [solicitation] specifications." Vanguard Recovery Assistance v. United States, 101 Fed. Cl. 765, 787 (2011). The court perceives no "unreasonably narrow" evaluation, ECF No. 40-1 at 31, or clear error of judgment by the VA that would support overturning the agency's conclusions about plaintiff's proposal weaknesses. See Bowman, 419 U.S. at 285. Instead, it appears that plaintiff's challenge to the VA's evaluation of its Sample Task 2 proposal amounts to a disagreement with the VA's conclusions.

Likewise, review of plaintiff's cited examples of allegedly disparate treatment demonstrates that plaintiff has not made the requisite showing that its proposal is "substantively indistinguishable" from the other offerors' proposals. See Office Design Grp., 951 F.3d at 1372. The agency clearly considered the extent to which each offeror depicted its architecture and determined that the number of issues with plaintiff's diagram merited a significant weakness, while the issues with the others were less severe. Compare, e.g., ECF No. 20-12 at 925 (the agency describing the four environments, [ ],

17

and platform that plaintiff failed to depict), with ECF No. 20-10 at 14 (offeror 81—which plaintiff argues should have received a weakness for its diagram—depicting all elements except three of its cloud services). The court is satisfied that the VA closely reviewed each proposal and that any differences in evaluation outcome are not the result of disparate treatment of "indistinguishable" proposals. Office Design Grp., 951 F.3d at 1372. Rather, in the court's view, the evaluation flaws and disparate treatment of which plaintiff complains amount to a strong disagreement with the conclusions the VA drew during its evaluation.

### 3. The VA Appropriately Applied All Evaluation Criteria

Plaintiff argues that the VA's competitive range determination "not only rested on [ ] erroneous technical evaluations . . . , but it also failed to give due consideration to non-technical evaluation criteria." ECF No. 40-1 at 34-35. According to plaintiff the agency's consideration of the past performance and veterans employment factors failed to "reflect[] any assessment of the differences between proposals." Id. at 36. Plaintiff argues that the agency "dispatched [with] these factors in just two sentences," id. (citing ECF No. 20-12 at 1288), and in doing so "failed to give required comparative weight" to the factors, id. at 37. See also id. at 37-38.

Review of the record, however, reveals that the VA's evaluation was detailed and reasoned, and included review and discussion of each of the evaluation factors and how they weighed against each other. See ECF No. 20-12 at 1288-89. The VA's review included:

(1) Detailed price evaluations for each offeror, see ECF No. 20-4 at 437-84, ECF No. 20-5 at 1-48;

(2) An initial 147-slide briefing related to the evaluation of Sample Task 1, which included information about the strengths and weaknesses of each offeror and a detailed price evaluation, see ECF No. 20-5 at 49-196;

(3) An initial competitive range determination memorandum, and a confirmation of that determination after items for negotiation were considered, see id. at 239-42;

(4) Evaluation reports for each offeror that included a detailed overview of the assessed strengths and weaknesses for the sample tasks and management proposal, the past performance summary and weaknesses, the veterans employment calculation, and the strengths and weaknesses of the small business participation levels, see ECF No. 20-12 at 752-1066;

(5) A second, more than 200-slide, presentation that included details about the strengths and weaknesses of each offeror's Sample Task 2 and management

proposals, a detailed review of each offeror's past performance, a calculation of each offeror's veterans employment percentage, and a review of each offeror's small business participation, see id. at 1069-1283; and

(6) A final competitive range determination memorandum explaining the SSA's and contracting officer's review of the evaluation and rationale for their decision-making, see id. at 1284-89.

Reviewing each of these evaluations, it appears to the court that the VA specifically considered all of the relevant factors in assigning plaintiff its ratings. See id. at 910-34.

Taking into account the breadth and detail of the VA's evaluation, the court cannot credit plaintiff's assertion that the VA "failed to give due consideration to non-technical evaluation criteria." ECF No. 40-1 at 35. It is not in the court's purview to "'substitute its judgment for that of the agency.'" Bowman, 419 U.S. at 285 (quoting Citizens to Preserve Overton Park, 401 U.S. at 416). If, as it has here, the VA has "articulate[d] a 'rational connection between the facts found and the choice made,'" the court will uphold the agency's decision. Id. (quoting Burlington Truck Lines, 371 U.S. at 168). The court perceives no failure to consider relevant factors for evaluation or clear error of judgment by the VA that would support overturning the agency's conclusions. See Bowman, 419 U.S. at 285. Instead, it appears that plaintiff's challenges to the VA's evaluation of the proposals amount to disagreements with the VA's conclusions.

IV. Conclusion

Accordingly, for the foregoing reasons:

(1) Plaintiff's motion for judgment on the AR, ECF No. 40, is **DENIED**;

(2) Defendant's and intervenor-defendant's cross-motions for judgment on the AR, ECF No. 42, and ECF No. 44, are **GRANTED**;

(3) The clerk's office is directed to **ENTER** final judgment in defendant's and intervenor-defendant's favor **DISMISSING** plaintiff's complaint with prejudice; and

(4) On or before **March 21, 2022**, the parties are directed to **CONFER** and **FILE** a **notice** attaching the parties' agreed upon redacted version of this opinion, with all competition-sensitive information blacked out.

19

IT IS SO ORDERED.

                                        s/Patricia E. Campbell-Smith
                                        PATRICIA E. CAMPBELL-SMITH
                                        Judge